CALEB W. BROWN *et al.*, Appellants, *v.* HENRY L. NILES, Appellee.

### APPEAL FROM STEPHENSON.

A conveyed land to B, to defraud creditors B conveyed the same land to C, for a like purpose, taking an agreement that C would convey the land to A. B continued in possession until after the land was levied on at the instance of D. A executed a release to C, of his interest in the land; C re-conveyed the land to B ; B also conveyed a part of the land to E. *Held*, that the conveyance from C to B did not strengthen the title of the latter, because the conveyance from A to B, was as to A complete, though void as to his creditors, and that D's lien is valid, whether his debt occurred prior or subsequent to the fraudulent conveyances set aside ; and that E, having purchased after the levy, and the filing of it in the Recorder's office, could not be protected.

The filing with the Recorder a certificate of a levy, upon an execution from a foreign county, is a notice of the rights of the judgment debtor in the land levied upon.

THE decree in this case was rendered by SHELDON, Judge, at November term, 1854, of the Stephenson Circuit Court. The facts of the case are set out in the opinion of the court.

T. TURNER and E. S. LELAND, for Appellants.

F. BURNAP, for Appellee.

SKINNER, J. Niles, on the 14th day of September, 1853, filed in the Stephenson circuit court, his bill in chancery against Jenks, Brown and Sills.

25

The bill alleges, that Niles, on the 28th day of March, 1853, in the Jo Daviess circuit court, recovered a judgment against Jenks, for $990.50; that execution issued upon the judgment to Stephenson county, and was, on the 5th day of April, 1853, levied on certain lands as the property of Jenks, and that, on the same day, a certificate of the levy was duly filed in the recorder's office of Stephenson county; that Jenks, in the year 1847, being the owner of the lands, and then being indebted to Niles, in the debt for which the judgment was rendered, and also to other persons, to defraud, delay and hinder his creditors, and without consideration, executed a deed of the lands to Brown; that in 1849, Brown being indebted to divers persons, to defraud, delay and hinder such creditors, without any consideration, executed a deed of the same lands to one Watson, and at the same time took from Watson an agreement, in writing, to convey the lands to Jenks; that Brown continued in possession of the lands until after the levy of the execution thereon, and filing of the certificate of levy; that while Watson held the title to the lands, Jenks executed to Watson a release of his interest in the lands, and that such release is inoperative to convey any title, and was not recorded until after the filing of the certificate of levy; that Watson, in the year 1852, without consideration, re-conveyed the same lands to Brown; that Brown, in 1853, and after the levy and the filing a certificate thereof in the recorder's office, to defeat the execution and levy, without consideration, conveyed a portion of the land, upon which was a mill, erected by Jenks, to Sills.

The bill prays that the several deeds be set aside, and the lands subjected to the satisfaction of the execution, and waives that the answers of Brown and Sills be under oath.

Jenks answered, admitting the allegations of the bill. Brown and Sills answered. They admit the recovery of the judgment of Niles, the issuing of the execution; admit the execution of the deed by Jenks to Brown, but deny that it was without consideration, or for any fraudulent purpose, and charge that the judgment of Niles is fictitious, and the proceeding for the benefit of Jenks; admit the execution of the conveyance of Brown to Watson, but deny that it was without consideration, or for any fraudulent purpose, and charge that the release of Jenks to Watson, in 1849, was made in good faith, for valuable consideration, and that it is valid and effectual to defeat any remedy of Niles; admit the conveyance of Brown to Sills, but charge that the same was made in good faith, and for valuable consideration, and deny all fraud.

The cause was tried upon bill, answers, replication and proofs, and a decree was rendered setting aside the deeds, and subjecting the lands to the execution of Niles.

Brown and Sills appealed, and assign for error the rendition of the decree. The evidence preserved in the record, we think, establishes, that Jenks, at the time of the execution of the deed to Brown, was in debt and unable to pay; that the lands conveyed to Brown were his principal property; that this conveyance was made without consideration, and to delay and hinder Jenks' creditors; that the conveyance from Brown to Watson was made without consideration, and to delay and hinder Brown's creditors; that the release from Jenks to Watson was obtained for the benefit of Brown, and at his expense; that the conveyance of Watson back to Brown was without consideration, and in pursuance of a secret understanding between them; that Watson never had any real interest in the lands; that Sills purchased of Brown after the filing of the certificate of levy, with actual knowledge of the execution and levy, and that on his purchase, Brown indemnified him against the execution of Niles; that the execution was levied on the fifth day of April, 1853, and that a certificate of the levy was on the same day duly filed in the recorder's office of Stephenson county.

Under the evidence, Brown must be regarded as occupying no better condition than he would if the transactions between him and Watson had never been taken.

If Watson acted for Brown in obtaining the release from Jenks, it is the same as if Brown himself had obtained it directly from Jenks. Brown could gain nothing by an additional deed from Jenks.

As between Brown and Jenks, the title was vested in Brown by the first deed, and the law would not aid Jenks to get it back. As to him it was forever gone, and there was nothing left upon which his release could operate. 1 Story's Eq. Com., Sec. 371; *Lowry* v. *Orr*, 1 Gil. 70. Jenks' deed to Brown was void as to his creditors, and Niles, whether his debt occurred prior or subsequent, is entitled, in equity, to have this deed, and all fraudulent devices of Brown relating to the property, removed out of the way of his execution. 1 Story's Eq. Com., Sec. 361; *Miller* v. *Davidson*, 3 Gil. 518; *Valentine* v. *Beal*, 3 Scam. 206; *Farnsworth* v. *Strader*, 12 Ill. 482.

But if Sills is to be treated as a purchaser without notice, Niles is not entitled to a decree against him.

He purchased after the filing in the recorder's office of the certificate of levy, with actual notice of the execution and levy, and took indemnity from Brown against the execution.

Under the statute, judgments of the circuit courts are liens on the lands of the judgment debtor within the county where the judgment is rendered, from the last day of the term at which the judgment is obtained. Rev. Stat. 300.

And executions sent to other counties are liens upon the lands of the judgment debtor, levied upon after filing a certificate of such levy in the recorder's office of the county where the lands lie. Rev. Stat. 305, Sec. 25.

But Sills contends that he purchased upon exhibit of a perfect chain of title of record showing title in Brown, and that he cannot be affected by a levy upon the land of an execution against Jenks, who had conveyed to Brown before the lien of the execution could have attached.

The filing of the certificate of levy, we think, was notice to all the world of such rights as Niles had against the lands levied upon, and Sills was bound to inquire into those rights, and purchased at his peril.

If the filing of the certificate of levy in such case is not notice to subsequent purchasers, neither would the sheriff's deed, or the record thereof, be; and Brown could have defeated the execution and levy by selling the land at any time, until ejectment brought by the purchaser at the sheriff's sale. This ejectment could not be brought until after sale and the period of redemption had expired, which would exceed fifteen months. This construction of the statute would render worthless an ordinary and well known remedy.

The judgment creditor, where the debtor's lands have been conveyed to defraud creditors, may disregard the fraudulent conveyance while the lands remain in the hands of the fraudulent grantee; may levy upon the same, and the purchaser at sheriff's sale may bring ejectment, and, at law, avoid the fraudulent conveyance. In such case, the purchaser has but to prove the judgment, execution and sheriff's deed, and that the conveyance of the judgment debtor was made to defraud, delay, or hinder his creditors, to recover.

He recovers upon the strength of the lien. When then should that lien attach? Precisely when it would have attached had the avoided conveyance never been executed: at the time of filing the certificate of levy.

As to such creditor, the statute makes the fraudulent deed void, and his execution levied and certificate filed in the proper office, ought to be constructive notice of his rights to avoid the deed.

Any other construction would tend to encourage instead of preventing fraud.

There is some loose evidence in the record, tending to raise a doubt as to the existence of the debt upon which the judgment of Niles is founded, but it is not sufficient to justify the conclusion that the judgment is fictitious.

Fraud cannot be presumed, but must be satisfactorily proved.

*Decree affirmed.*